JohnstoN, Ch.
delivered the opinion of the Court.
The first question to be considered relates to the interest account upon the bond. The rule is well settled, with respect to payments made upon an instrument which is over due. The interest is computed up to the time of the payment, and the latter is taken out of the aggregate, first applying it to the interest, and then to the principal. If, by this process, the interest is only partially extinguished, the residue of it does not become an interest-bearing fund, but interest runs upon the principal as before. If, however, the payment extinguishes, not only the interest, but part of the principal, the balance of principal left, continues to bear interest. This is too well understood to require further explanation..
The same rule obtains where general payments are made, in anticipation, upon an instrument securing the payment of money at a future specified time, with interest thereon from a prior date.
The case of Gibbes v. Chisholm decides that where the agreement is to pay a principal sum at a future day, with interest from the date, the aggregate of principal and interest, at the maturity of the obligation, becomes an interest-bearing, fund ; and may, for that purpose, be considered as forming, from that time, one capital or principal sum. The substance of this doctrine is, that where interest is stipulated to be paid at a fixed period, and the stipulated time has arrived, or is passed, the interest then due is no longer interest, but principal, and, as such, carries interest in future.
But until the period arrives, the interest, being contemplated by the parties as interest, — incident to and flowing from the principal debt or sum advanced, is also so regarded and treated by the Court: and general payments made upon the instrument, before its maturity, are applied first to the interest and then to the principal, exactly as payments made on a contract over due are applied. This is the doctrine of De Bruhl v. Neuffer, a decision of our own Law Courts : and which must govern this case. It is contended that by the terms of the bond, Mr. Singleton stipulated that all payments made by him, before the 22d of January, 1846, should be credited exclusively, or primarily, upon the principal of the debt. But such is not our construction of the instrument. By “ the said sum of $76,000,” we understand reference to have been made to the previous part of the instrument, by which that sum was to be paid with interest thereon fropi this date, pay *173 able annually;” and this construction is strengthened by the stipulation that the payments were to be “endorsed upon the said bond,” (generally) “ when such payments shall be made.”
The next question relates to the deduction to be made for the 50 acres taken off by O’Hanlon’s title. The bill claims that interest upon $750, the value of this land, be deducted from the bond, from the date of the contract, until Myers purchased from O’Hanlon and conveyed to Singleton, his ven-dee : and, also, that allowance be made to the vendee for the waste committed by O’Hanlon.
If Mr. Singleton is, in consequence of the defect of title, entitled to any remedy, reaching further back than his eviction, it must result either from the legal effect of the covenants of his deed, or from considerations purely equitable.
His deed was executed and possession taken in 1836, and' his possession does not appear to have been disturbed until 1842.
It has been held that our ordinary conveyances include covenants of title and of quiet enjoyment: but there is this difference between them; that the former begin to run from the date of the conveyance, the latter only from eviction. If Mr. Singleton had any remedy on his covenant, arising from a partial defect in his title, it was barred in 1840. So that we must take him to have waived that remedy, and to have restricted himself to such right as might arise upon his being afterwards evicted, if that should ever happen. If he knew of O’Hanlon’s title before the trespass of the latter, good faith required that he should have given notice of it to Myers, and either required the defect to be cured, or that a partial resci-sión and abatement should be made on the contract: — unless he was willing to depend upon the other alternative of his deed, to arise upon eviction.
When the trespass was committed, and he was fully advertised of O’Hanlon’s claim, he does not appear to have desired either a rescisión or abatement. His course was different. He called upon his grantor to sustain the suit; evidently intending to retain his bargain, if not evicted. And when he was evicted, he did not then claim the remedy which his deed afforded, but within a few days afterwards accepted the conveyance by which his title was perfected.
We think that under these circumstances he has no legal claim for redress, if indeed he sustained any injury.
Then as to his equitable claims. The bill does not state that he was for one moment prevented from the full enjoyment of this part of the premises of which he was let into possession ; or hindered, in any respect, from making any use of it which he pleased. It was not cultivated land yielding a rent; in respect to which if a party, and debarred the use, he has sustained a serious injury. But it was wild land, lying at a distance from the opep lands, and even the timber *174 was only valuable, as a resource for fencing, at some remote period.
We do not perceive that he has any solid claim for compensation, beyond the trifling injury for the few days which elapsed between the eviction and the restoration of title to him; and the value of the timber cut down by O’Hanlon. For the -first he is entitled to deduction of interest; and for the last the value of the trees. The last question relates to the costs. An appeal relating to costs alone, will not be sustained. But here the decree is found to be erroneous on other points; and the Court is to adjudge the costs upon the principles of the decree as reformed.
The plaintiff tendered the sum which he considered due upon the contract, and filed the bill for an injunction, because his tender was not received and the bond given up. It must depend upon the sum really due at the time, whether he or the defendant is to pay the costs. If the sum tendered be found to be all that was due, the defendant should pay them: if otherwise, they should be paid by the plaintiff: and it is so ordered.
It is further ordered, that the report be recommitted to the Commissioner, to take the accounts agreeably to this opinion.
DunkiN, Ch. and Dargan, Ch. concurred.

Decree reversed.